UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAVIER SUAREZ FLORES, | ) | 1:07-cv-01194-OWW-JMD-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| KEN CLARK | ) | |
| | ) | |
| Respondent. | ) | OBJECTIONS DUE WITHIN THIRTY DAYS |
| | ) | |

Petitioner Javier Suarez Flores ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

On November 16, 2005, Petitioner was sentenced to fifteen years to life imprisonment after a conviction in the Superior Court of California, Kern County, for violation of California Penal Code section 289 (a)(1) (sexual penetration with a foreign object).[1] (Pet. at 1).

The California Court of Appeal affirmed Petitioner's conviction in a reasoned decision issued on March 22, 2007. (Pet., Ex. A). Petitioner filed a petition for review in the California Supreme Court on April 24, 2007. (Lodged Doc. No. 9). The California Supreme Court denied the petition for review on June 20, 2007. (Lodged Doc. No. 12).

///

---

[1] Petitioner was also convicted of failure to register as a sex offender, however, the California Court of Appeal reversed that conviction. (Pet., Ex. A)

On August 16, 2007, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court, Eastern District of California. The Court ordered Respondent to file responsive pleading on November 28, 2007.

Respondent filed an answer to the petition on February 26, 2008. Petitioner filed a traverse on April 23, 2008.

**Factual Background**

Petitioner asserts five claims for relief: 1) prosecutorial misconduct based on the prosecutor's reference to Petitioner's demeanor during trial; 2) uninformed waiver of Petitioner's right to testify based on instructional error by the trial court; 3) ineffective assistance of counsel; 4) prosecutorial misconduct based on the prosecutor's use of inappropriate character evidence; and 5) admission of hearsay evidence in violation of Petitioner's Sixth Amendment rights.[2] (Traverse at 2). The California Court of Appeal summarized the factual record of Petitioner's trial as follows:

> Defendant Javier Suarez Flores stands convicted of a violent sexual assault for which he received a sentence of 15 years to life. We affirm that conviction, rejecting defendant's several claims of prejudicial error, including his claim that the trial court abused its discretion when it rejected defendant's bid to deny or explain prior offenses the prosecution planned to use to impeach his credibility. Any mistake the court made in this regard was harmless because the evidence of guilt was overwhelming....
>
> D., the victim, arrived at Kern Medical Center by ambulance on December 19, 2004. She told a paramedic and a nurse that she had been sexually assaulted. Emergency room personnel examined her and found that she was hemorrhaging from five wounds to her genitals, two internal and three external. Two of the lacerations were 10 centimeters long and a third was seven centimeters long. There were also bruises on her genitals and thighs. The sexual assault nurse examiner concluded that D. had been forcefully penetrated by something larger than a penis. Another nurse who was present believed that, of more than 600 sexual assault cases she had seen, this was only the third with a similar amount of injury and bleeding. The injuries were no more than a day old. D. underwent surgery to repair the lacerations.
>
> By the time D. was released from the hospital the following day, the Shafter Police Department had begun an investigation. A detective showed her a photographic lineup, including a picture of defendant, whom D. identified as the assailant.
>
> The district attorney filed an information charging defendant with one count of sexual penetration with a foreign object. (Pen. Code, § 289, subd. (a).) 1 With respect to this count, the information alleged that defendant caused great bodily injury. (§ 667.61, subd. (e)(3).) The information also charged one count of being required to register as a sex offender and failing to do so. (§ 290, subd. (g)(1).)

---

[2] Petitioner initially asserted seven grounds for relief. However, Petitioner concedes in the traverse that grounds six and seven are not cognizable. (Traverse at 2). Accordingly, the Court will not address claims six and seven.

At trial, D. described the assault. On the night of December 18, 2004, she was at a cabin court in Shafter, waiting outside her friend's cabin for the friend to come home. Defendant, who lived in another cabin, approached. D. identified defendant in the courtroom. He asked D. her name and invited her to his cabin for a soda. D. went with him. Inside his cabin, defendant went to the kitchen momentarily and then returned and attacked D. He got on top of her and tried to pull her pants off. She said no and resisted, but he put his fingers in her vagina. Then she felt him pulling from the inside. She saw that she was bleeding. Defendant became angry, saying D. was making a mess. He began trying to clean up the blood. D. fled to the cabin of her friend. The ambulance came to take her to the hospital early the next morning.

Several items of evidence relevant to D.'s credibility were introduced. She was arrested "for drugs" the morning of the day she was assaulted and did not know if she was still under the influence at the time of the attack. Between 1992 and 2003, she was convicted of second degree felony burglary, felony forgery, escaping from jail while charged with a felony, misdemeanor petty theft (on two separate occasions), and "possessing a bad check."

A nurse who examined D. testified that, at the hospital, D. said "she was out in Shafter near a field, walking, and that somebody came and attacked her and tried to penetrate her. And then because he was unable to, that he put his fingers and his fist inside of her." Defense counsel argued that this was inconsistent with D.'s trial testimony.

The prosecution introduced DNA evidence that placed the injured victim inside defendant's cabin. Officer Robert Courtney testified that he searched the cabin. He found fresh blood on defendant's mattress. The mattress had been turned over so that the bloody side faced downward. Courtney cut samples from the bloody mattress and sent them to the Kern County Crime Lab. A laboratory technician testified that she performed DNA tests on the blood from the mattress samples. The odds were 469 quadrillion to one against the blood belonging to anyone but D.

There was additional DNA evidence. On the afternoon after the attack, defendant was taken to the Shafter police station. There, Officer Courtney read him his Miranda rights, took his statement, and arrested him. Before taking defendant to the county jail for booking, Courtney had defendant remove his outer clothes. He found blood on defendant's t-shirt and underpants. When Courtney saw the blood, defendant said, "'Oh, shit. These are not mine. You put that there.'" These items were also sent to the crime lab, where DNA testing determined that the blood was that of the victim.

Mark Cooter, another officer who participated in the investigation, testified about still more bloody items. When Officer Cooter drove up to defendant's cabin, he saw defendant placing a duffel bag in a car. The bag was open and he saw a bloody bed sheet or pillowcase inside. He seized the bag and found a pair of coveralls that also had blood on them. Inside a dumpster a few hundred feet from defendant's cabin, Cooter found bloody rags. DNA from the blood on the coveralls was tested and found to belong to the victim.

Defendant told Officer Courtney he did not know where the blood on all these items came from and denied that it had been there when he woke up that morning. In a second interview, he told Courtney there was no blood when he went to bed, but while he was sleeping someone brought in the bloody sheets and coveralls and put blood on the mattress. He admitted that the underwear belonged to him and claimed the police put blood on them. He also claimed that the victim was accusing him because she had asked him for a loan and he had refused, angering her.

The Shafter Police Department employee responsible for sex-offender registration testified. She said defendant's most recent registration was on February 13, 2004, at an address on Alamo Street. He had never registered at 1035 South Central Valley Highway, where his cabin was located. To prove that defendant was required to register, the People introduced a certified court docket showing that he pleaded guilty in 1989 to a violation of section 647.6 (annoying or molesting a child). The People also introduced a certified rap sheet showing this conviction. The rap sheet was unredacted and also showed additional convictions: misdemeanor sexual battery, felony driving under the influence, and misdemeanor battery. It also contained a long list of charges that did not result in convictions, including lewd acts with a child under 14, oral copulation with a child under 16, rape, kidnapping, and domestic battery.

A friend of defendant testified about how long defendant lived in the cabin. The prosecutor asked, "Do you know about how long he was living at 1035 South Central Valley Highway?" The friend replied, "The truth, I don't know if it's two months or something like that."

After the prosecution completed its presentation of evidence, defense counsel told the court that, against counsel's advice, defendant wanted to testify. Defense counsel and the court then advised defendant of his rights and admonished him regarding the use of prior offenses to impeach him. In a motion in limine, the People had sought to introduce two prior misdemeanors of moral turpitude to prove intent and motive. The court had denied the motion but indicated that at least one of these offenses would be admissible for purposes of impeachment if defendant testified. These prior offenses were the principal focus of the discussion among defendant, defense counsel, and the court regarding defendant's decision to testify or not to testify. When this discussion took place, the certified court docket and certified rap sheet had already been admitted into evidence.

"[DEFENSE COUNSEL]: Do you understand once you testify, any prior convictions of moral turpitude or dishonesty can be brought up to impeach your credibility?

"THE DEFENDANT: I believe I understand.

"[DEFENSE COUNSEL]: In other words, the jury wouldn't necessarily hear that unless you take the stand and testify.

"THE DEFENDANT: I don't know-I don't know what that-what it means. Can your repeat it? Can you repeat it?

"[DEFENSE COUNSEL]: Yes. Let me say it differently. There are two prior convictions both involving children. If you testify in this case, [the prosecutor] can bring those convictions up before this jury. The jury is allowed to use those in judging your credibility.

"THE DEFENDANT: About those problems that I've been accused of previously, they didn't want to take any fingerprints nor my saliva analysis.

"[DEFENSE COUNSEL]: Those aren't an issue. Those are convictions.

"THE DEFENDANT: But I wasn't found guilty.

"[DEFENSE COUNSEL]: Those are convictions.

"THE COURT: Okay. And that's incorrect, you were found guilty. At least that's

apparently what the record shows.

"[DEFENSE COUNSEL]: The record shows that.

"THE COURT: The record shows that you were guilty and the jury is going to have the right to know that you committed two felonies, which they will be able to consider in weighing your truthfulness when you're testifying.

"[THE PROSECUTOR]: Your Honor, they're not felonies, they're misdemeanors.

"THE COURT: Okay. Two prior crimes involving moral turpitude which the jury will be able to consider in weighing your testimony-the truthfulness of your testimony.

"THE DEFENDANT: About these questions, I wanted to clear these things up about what I was charged with.

"[DEFENSE COUNSEL]: This is not a trial on those issues and you cannot do that. This trial is not on your prior convictions. Those are simply going to be used to show that you have prior crimes that involve children, crimes of moral turpitude. If you chose not to testify, those issues do not come up. And the court will instruct the jury that they can infer nothing negative from you not taking the stand in your own defense. You don't have to prove anything.

"THE DEFENDANT: Well, I was told that on those charges that I wasn't guilty of anything because they didn't want to give me the analysis that I asked for.

"[DEFENSE COUNSEL]: Those are convictions. There's nothing I can do about that.

"THE DEFENDANT: They have to prove the evidence back in Los Angeles.

"[DEFENSE COUNSEL]: They are proved, and [the prosecutor] has the paperwork that will, in fact, be admitted.

"THE DEFENDANT: I'll answer those questions later when that's dealt with. I'm not guilty. I'm not guilty of those charges. And those charges that I was charged with before, I'm also not guilty.

"[DEFENSE COUNSEL]: You understand that this trial is about the rape?

"THE DEFENDANT: Yes. Yes, I understand.

"[DEFENSE COUNSEL]: You cannot defend yourself against the prior convictions.

"THE DEFENDANT: Well-

"[DEFENSE COUNSEL]: Well, what?

"THE COURT: What year were those prior convictions?

"[DEFENSE COUNSEL]: '88 for the female, '05 for the little boy.

"THE COURT: Okay. Earlier this year.

///
///

U.S. District Court
E. D. California

5

"[THE PROSECUTOR]: No, it was '01 not '05 with the little boy. The little boy was just simple battery. The court already said I wasn't allowed to impeach on the little boy.

"THE COURT: Okay. One prior.

"[THE PROSECUTOR]: But then he also has a 1988 conviction for annoying and molesting children, 647.6, and then a 1995 conviction for sexual battery on an adult woman. Those are both misdemeanors and I provided the court with the case of People versus Duran-yeah, People versus Duran that allows the People just to impeach with the conviction, itself, and not be required to bring in other evidence.

"THE COURT: The convictions that occurred in 1995 are not going to be heard in this courtroom. If you contend you're not guilty, you had to do it back in 1995 and in that particular court. Not going to be able to try and prove your innocence in this court because you've already been found guilty. As long as you understand that. Now, also, [defense counsel] has told you the jury would not hear about these prior incidents unless you testify. If you do testify, then they can hear about those. Also they can use your testimony against you if you do testify. If you do not testify, the jury will be told that they cannot use your silence or your failure to testify against you in any way. Not only can they not consider it, they're not even allowed to discuss it during their deliberations. Do you understand all of that?

"THE DEFENDANT: Yes, I understand.

"THE COURT: Understanding that, do you wish to testify?

"THE DEFENDANT: No, no, no. I don't understand a lot of things.

"THE COURT: Okay. So do you not want to testify?

"THE DEFENDANT: It depends on the questions later.

"THE COURT: Okay. And the thing is, if you decide to testify, you cannot refuse to answer a question. You can't pick and choose the questions you want to answer.

"THE DEFENDANT: Yes, correct.

"THE COURT: So what I'm going to suggest you do-

"THE DEFENDANT: But there's a lot of questions that I'm asked.

"THE COURT: Yes. There will be a lot of questions that you'll be asked. I suggest you talk to your attorney and decide whether or not you want to testify. It's your right to testify. It is your right to not testify. Go talk to your attorney."

After a discussion off the record between defendant and defense counsel, defense counsel told the court, "Judge, based on this recent conversation with Mr. Flores, it's my understanding he wishes to remain silent in the matter." The court obtained confirmation of this from defendant. Defendant did not testify. Defense counsel called no witnesses and introduced no other evidence. The jury found defendant guilty as charged and found true the allegation of great bodily injury.

(Pet., Ex. A at 3-9).

## Discussion

**I. Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a);[3] 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. See 28 U.S.C. § 2241(d).

Petitioner asserts that he is currently incarcerated at the Controlled Substance Abuse Treatment Facility at Corcoran Prison in Kings County, California, in violation of his right to due process under the United States Constitution. As Kings County is within the Eastern District of California, the Court has jurisdiction over the instant petition and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

**II. Standard of Review**

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

///
///

---

[3] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

1  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citations omitted).

**III.    Analysis**

   **A. Prosecutor's Comments on Petitioner's Demeanor During Trial**

During closing argument in Petitioner's trial, the prosecutor commented on the fact that the Petitioner allegedly laughed during the victim's testimony. The prosecutor stated, "as many of you may have seen while she was testifying, while defense counsel was giving opening statements, the defendant was laughing, again exerting power and control over [the victim]. Rape is not a crime about sex; it's a crime about control." (Pet., Ex. A at 19). The California Court of Appeal evaluated Petitioner's claim as an inappropriate use of character evidence and held that, although the prosecutor's comment was inappropriate, it was not reasonably likely that the jury would have returned a more favorable verdict if the prosecutor had never made comments about Petitioner's courtroom behavior or if the court had admonished the jury to disregard the comments." Id.[4]

Where the defendant does not testify at trial, a prosecutor's comment on the defendant's off-the-stand behavior constitutes a violation of due process. United States v. Schuler, 813 F.2d 978, 980 (9th Cir. 1987). A prosecutor's comment on a defendant's off-the-stand behavior raises several issues, "including whether such remarks (1) introduce character evidence solely to prove guilt, (2) violate a defendant's fifth amendment right not to be convicted except on the basis of evidence adduced at trial, and (3) violate fifth amendment rights by indirectly commenting on a defendant's failure to testify at trial." Id. Comments on a defendant's off-the-stand behavior are subject to harmless error analysis. See id. at 982.

///

---

[4] Petitioner contends that the Court of Appeal's should have applied the "harmless beyond a reasonable doubt standard" set forth in Chapman v. California, 386 U.S. 18, 24 (1967). The Court need not decide whether the Court of Appeals applied the correct standard to Petitioner's claim, as it seems clear that the error was harmless even under the more onerous Champan standard. In any event, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman." Fry v. Pliler, 127 S.Ct. 2321, 2328 (2007).

On collateral review of a state-court criminal judgment under section 2254, an error is harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" Fry v. Pliler, 127 S.Ct. 2321, 2325 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

As the Court of Appeal stated, "the prosecutor's improper comments were not of great significance under the circumstances. The bottom line here is ...[that]'[t]he evidence presented against defendant at trial was overwhelming. While the prosecutor's closing argument should have avoided reference to defendant's courtroom conduct, it does not justify disturbing the guilty verdict.'" Id. (citations omitted). After a careful review of the record, the Court cannot say that the prosecutor's comments had a substantial and injurious effect or influence in determining the jury's verdict. Fry, 127 S.Ct. at 2325. The prosecutor's comment does not appear to have been an attempt to direct the jury's attention to the fact that Petitioner refused to testify. See Schuler, 813 F.2d at 981 (recognizing that not all comments on a defendant's off-the-stand demeanor implicate due process). Further, the prosecution's isolated reference to Petitioner's demeanor during closing argument was insignificant in light of the powerful evidence of Petitioner's guilt, such as the fact that the victim's blood was found on Petitioner's underpants after his arrest. The physical evidence against Petitioner, coupled with victim's testimony and the testimony of the investigating officers, render the prosecutor's inappropriate comments harmless. Accordingly, Petitioner is not entitled to relief based on his claim of prosecutorial misconduct during closing argument.

**B. Waiver of Right to Testify**

Petitioner contends that the trial court erroneously instructed him that, if he testified, he would not be able to assert his innocence with respect to past crimes the prosecution intended to use to impeach his credibility. Petitioner contends that the trial court's instruction was a "material falsity" that invalidates the validity of his waiver of his right to testify. (Pet. at 25).

As a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991). However, where the state's case is overwhelming, other evidence my render a defendant's testimony incredible, and thus the defendant's inability to testify my be harmless. Id. In denying Petitioner's state habeas claim regarding waiver of his right to testify, the Court of Appeal

stated "this is an unusual case in that there is both overwhelming evidence of defendant's guilt and an extensive record of his attempts to account for the facts, both to the police and to the sentencing court. Under the circumstances, we do not believe we need a formal proffer of testimony to determine that any error in the ruling at issue was harmless beyond a reasonable doubt." (Pet., Ex. A at 18). After reviewing the record, the Court cannot say that the Petitioner's decision to waive his right to testify had a substantial and injurious effect or influence in determining the jury's verdict. Fry, 127 S.Ct. at 2325. As the Court of Appeal noted:

> Defendant's several versions of the facts not only were implausible but also conflicted with one another in multiple ways. He first told police there was no blood on him or in the cabin when he woke up in the morning, then later told them someone came in and placed it there while he was sleeping. He also said police put the victim's blood on the undershirt and underpants he was wearing. At the sentencing hearing, defendant gave yet another account, saying that the victim, bleeding from a previous attack by someone else, broke into his cabin, attacked him, robbed him, and spread her blood around in the process.
>
> We must compare the weakness of any testimony along these lines with the strength of the prosecution's case. The proof of the victim's blood on defendant's mattress and on the undergarments he wore to the police station constituted overwhelming evidence that defendant was the person who inflicted her injuries.

(Pet., Ex. A at 15). Even assuming constitutional error occurred, the error was harmless given the weakness of Petitioner's testimony and the strength of the prosecution's case. Had Petitioner testified, Petitioner's past crimes would have been highlighted for the jury during cross-examination, and Petitioner would have had to explain the multiple inconsistent stories he gave to investigators, which would have seriously diminished his credibility. Accordingly, the Court finds that Petitioner's decision not to testify did not have a substantial and injurious effect or influence in determining the jury's verdict, and therefore Petitioner is not entitled to relief on this claim. See Fry, 127 S.Ct. at 2325.

### C. Ineffective Assistance of Counsel Claim

Petitioner contends he was denied effective assistance of trial counsel due to his counsel's failure to 1) object to the admission of evidence of Petitioner's prior convictions, 2) move for a bifurcated trial on the failure to register as a sex offender charge, and 3) request a limiting instruction with respect to the evidence of Petitioner's prior convictions. (Pet. at 34-37). For Petitioner to prevail on his ineffective assistance of counsel claim, he must show: 1) that counsel's performance

was deficient, and 2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them. Id. at 697; Thomas v. Borg, 159 F.3d 1147, 1151-52 (9th Cir. 1998). Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment. Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998). A petitioner must show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. Strickland, 466 U.S. at 694.

The California Court of Appeal applied the appropriate standard to Petitioner's ineffective assistance of counsel claim and determined that: "[t]he evidence of guilt was overwhelming, so it is not reasonably likely that, absent counsel's deficient conduct, defendant would have obtained a more favorable result." (Pet., Ex. A at 26) (quoting Strickland v. Washington, 466 U.S. at p. 694). The Court cannot say that the California Court of Appeal's application of Strickland was contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The Court agrees with the California Court of Appeal's decision that the physical evidence against Petitioner, coupled with victim's testimony and the testimony of the investigating officers, rendered the alleged deficiencies of Petitioner's trial counsel harmless. First, had Petitioner's counsel moved for a bifurcated trial and objected to the entry of Petitioner's rap sheet into evidence, the only possible effect would have been to prevent the jury from learning of Petitioner's prior offenses. Even absent knowledge of Petitioner's priors, the evidence of Petitioner's guilt would have still been sufficient to convince the jury that Petitioner was guilty beyond a reasonable doubt. Second, although a limiting instruction from the trial court might have helped ensure that the jury did not convict Petitioner based on his prior crimes, it is extremely unlikely that Petitioner's prior crimes played a significant role in determining the jury's verdict given the overwhelming evidence of Petitioner's guilt. Accordingly, Petitioner is not entitled to relief based on his ineffective assistance of counsel claim.

///

**D. Prosecutor's Conduct in Entering Petitioner's Rap Sheet Into Evidence**

Petitioner contends that the prosecutor committed misconduct by entering Petitioner's rap sheet into evidence, despite an *in limine* order entered by the trial court that the rap sheet was inadmissible under California Evidence Code section 352. (Pet., Ex. A at 23). In some instances, prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. Greer v. Miller, 482 U.S. 756, 765-66 (1987) (citations omitted). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Id. In rejecting Petitioner's prosecutorial misconduct claim, the California Court of Appeal held:

> that the prosecutor acted improperly, whether deliberately or negligently, in moving the rap sheet into evidence. It is unnecessary to make the further determination of whether the prosecutor's conduct "involve[d] the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury" (People v. Gionis (1995) 9 Cal.4th 1196, 1215) and whether the conduct satisfied the first element of reversible prosecutorial misconduct. The second element, prejudice, was not satisfied. For the reasons we have discussed, the evidence of defendant's guilt was overwhelming. There is no reasonable likelihood that, absent the error, defendant would have obtained a more favorable verdict.

(Pet., Ex. A at 24).

In order for Petitioner to obtain federal habeas relief, Petitioner must demonstrate that the prosecution's misconduct had a substantial and injurious effect or influence in determining the jury's verdict. Fry, 127 S.Ct. at 2325. The Court agrees with the Court of Appeal that the prosecution's misconduct did not harm Petitioner. The jury knew that Petitioner had been convicted of at least one sexual offense in the past, as there was already evidence on the record indicating that Petitioner was required to register as a sex offender. (Pet. at 44). In light of the testimony at trial and the powerful physical evidence presented against Petitioner, the Court cannot say that the prosecution's alleged misconduct had a substantial effect on the outcome of Petitioner's trial. Nor can the Court say that the prosecution's misconduct was especially egregious or indicative of a pattern of prosecutorial misconduct that "so infect[ed] the integrity of the proceedings as to warrant the grant of habeas relief." Brecht, 507 U.S. at 638 n.9. Accordingly, Petitioner is not entitled to relief.

///

///

### E. Hearsay Evidence Admitted Against Petitioner

Petitioner contends that the trial court erroneously admitted hearsay statements against him in violation of Petitioner's Confrontation Clause Rights under the Sixth Amendment. Petitioner also contends that his counsel was ineffective for failing to object to the hearsay evidence. The Court of Appeal summarized Petitioner's hearsay claim:

> Defendant argues that the prosecution introduced inadmissible hearsay when Officer Courtney testified as follows about his conversation with defendant: "I asked him who he had argued with last night. Flores told me that he hadn't argued with anyone. I told him that his neighbor saw him arguing with the lady that was hurt. And he, again, said that he drank his beers and went to bed. Flores said he was alone all night, no visitors." Defendant says the information that a neighbor claimed to have heard defendant arguing with the victim was hearsay for which there was no exception.

(Pet., Ex. A at 26).

#### 1. Evidentiary Claim

Respondent correctly points out that Petitioner's hearsay claim is procedurally barred. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks omitted). For a state procedural rule to be "adequate" to support the judgment, "the state's legal grounds for its decision must be firmly established and consistently applied." King v. LaMarque, 464 F.3d 963, 965 (9th Cir. 2006). The procedural bar imposed by the court of appeal is California's "contemporaneous objection rule." California's contemporaneous objection rule is applied independently of federal law, See Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999), and is applied consistently for the purposes of procedural bar analysis, Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002).

///

///

The Court of Appeal stated clearly that it declined to reach the merits of Petitioner's hearsay argument because Petitioner failed to preserve the issue at trial: "we decline to reach the merits of this argument because defendant did not object or make a motion to strike at trial, so the issue is not preserved for appeal. (Evid. Code, § 353)." (Pet., Ex. A at 26). Even assuming Petitioner can demonstrate cause for his failure to preserve the issue based on his counsel's failure to object, Petitioner cannot demonstrate prejudice and thus cannot overcome the procedural bar. See Coleman, 501 U.S. at 750. As discussed above, the evidence of Petitioner's guilt was overwhelming. The alleged hearsay evidence of which Petitioner complains is insignificant in light of the wealth of competent, admissible evidence presented by the prosecution. Accordingly, Petitioner's hearsay claim is procedurally barred. See id.

**2. Ineffective Assistance of Counsel Claim**

The California Court of Appeal reached the merit's of Petitioner's ineffective assistance of counsel claim and held that Petitioner could demonstrate neither deficient performance nor prejudice under Strickland. First, the Court of Appeal identified a plausible tactical reason supporting Petitioner's counsel's decision not to move to strike the alleged hearsay testimony: Petitioner's counsel attempted to impeach the officer who offered the hearsay testimony by cross-examining him as to why the neighbor' statement was not in the officer's report. (Pet., Ex. A at 27-28). Second, the Court of Appeal held that Petitioner was not prejudiced by his counsel's alleged deficient performance, as the hearsay evidence at issue was not of great importance to the people's case and other evidence of guilt was overwhelming. Id. After reviewing the record, the Court concludes that the Court of Appeal's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d). Nor was the Court of Appeal's holding based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Id. Accordingly, Petitioner is not entitled to relief.

///

///

///

**F. Cumulative Error**

Petitioner contends that the cumulative effect of the errors allegedly committed at his trial entitles him to habeas relief. Cumulative error comes into play when no single trial error is, on its own, sufficiently prejudicial to warrant reversal. E.g., Wooten v. Kirkland, 540 F.3d 1019 (9th Cir. 2008). "Briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner." Id. (citations omitted). "Under traditional due process principles, cumulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'...such 'infection' occurs where the combined effect of the errors had a 'substantial and injurious effect or influence on the jury's verdict.'" Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007). "If the evidence of guilt is otherwise overwhelming, the errors are considered 'harmless' and the conviction will generally be affirmed." Id.

The Court finds that the California Court of Appeal correctly rejected Petitioner's cumulative error claim. The evidence of Petitioner's guilt was overwhelming, and thus the Court cannot say that the errors of which Petitioner complains had a substantial and injurious effect or influence on the jury's verdict. The Court is confident that the combined effect of the individually harmless errors in Petitioner's case did not render Petitioner's defense "far less persuasive than it might otherwise have been." Id. at 927. Assuming 1) that the prosecutor had not commented on the Petitioner's demeanor; 2) that Petitioner had not waived his right to testify; 3) that Petitioner's counsel had objected to the introduction of Petitioner's rap sheet and requested bifurcated trials and a limiting instruction; 4) that the prosecutor had not entered Petitioner's rap sheet into evidence; and 5) and that the trial court had excluded the alleged hearsay testimony against Petitioner; the case against Petitioner would still have included evidence sufficient to convince the jury that Petitioner was guilty beyond a reasonable doubt, such as testimony that the victim's blood was found throughout Petitioner's residence and on Petitioner's underpants, the victim's testimony, and the testimony regarding Petitioner's inconsistent statements to law enforcement officers. Petitioner is not entitled to relief on his claim of cumulative error.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 10, 2009**          **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE